UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| MARK A. BIELSTEIN, ET AL. | § | |
| | § | |
| v. | § | CIVIL NO. 4:24-CV-146-SDJ |
| | § | |
| SIGNATURE SOLAR LIMITED | § | |
| LIABILITY COMPANY, ET AL. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants Signature Solar Limited Liability Company, James Showalter, and John Showalter's Motion to Quash Plaintiffs' Notice of Deposition of EG4 Corporate Designee and for Protective Order and Fees, (Dkt. #91), and non-party EG4 Electronics LLC's Motion to Quash Plaintiffs' Notice of Deposition and for Protective Order and Fees, (Dkt. #94). Both motions seek to quash the same third-party subpoena—Plaintiffs Mark A. Bielstein and Rachelle R. Bielstein's (together, the "Bielsteins") March 16, 2026, notice of deposition and subpoena directed at EG4 Electronics LLC. (Dkt. #91 at 1); (Dkt. #94 at 2). Having considered the motions, the briefing, and the applicable law, the Court concludes that the non-party motion, (Dkt. #94), should be granted in part and denied in part, and that Defendants' motion, (Dkt. #91), should be denied.

## I. BACKGROUND

The present dispute has its origin in early 2026. On January 12, the Bielsteins served written discovery on the Defendants. (Dkt. #91 at 7). The Defendants produced relevant documents on February 20, and Defendant James Showalter provided testimony at a deposition three days later. (Dkt. #100 at 1). From that evidence, the

1

Bielsteins allege that they uncovered the existence of a case-critical non-party entity that was previously unknown to them: EG4 Electronics LLC ("EG4"). *See* (Dkt. #100 at 1); (Dkt. #91-4 at 3) (stating that the Bielsteins first uncovered the existence of non-party EG4 after the Defendants produced the "Intertek report" in February 2026). Non-party EG4 was formed by James Showalter, who is both the company's registered agent and sole governing member. (Dkt. #94-3 ¶¶ 4–5).

In response to this new information, the Bielsteins, through counsel, sent a "Notice and Subpoena Duces Tecum for Plaintiff's Rule 30(b)(6) Deposition of EG4's Corporate Designee" by email to Defendants' counsel on March 16, 2026, at 3:16 p.m. (herein, the "Subpoena"). (Dkt. #91-2 at 6). In that email, the Bielsteins unilaterally scheduled the production deadline and deposition for non-party EG4 for March 24, 2026, at 9:00 a.m.—one day before the court-ordered March 25 discovery deadline. (Dkt. #91-2 at 6); (Dkt. #94-1 at 1); *see also* (Dkt. #88) (amended scheduling order). Thereafter, on March 17 at approximately 4:30 p.m., the Bielsteins delivered the notice and Subpoena to EG4's office, leaving the documents with James Showalter's executive assistant. (Dkt. #94-2 ¶ 2).

The next day, the Defendants—including James Showalter in his personal capacity—moved to quash the Subpoena. (Dkt. #91). Soon after, the Defendants also moved to stay the scheduled March 24 deposition, pending resolution of their motion to quash. (Dkt. #93). The Court granted the stay. (Dkt. #95). That same day, non-party EG4 appeared before the Court and filed its own motion to quash the Subpoena. (Dkt. #94). The dispute has been fully briefed. *See* (Dkt. #100, #101, #102, #104).

## II. LEGAL STANDARDS

### A. Rule 45: Motion to Quash

Under Federal Rule of Civil Procedure 45(d)(3), a court must quash or modify a subpoena if it: "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A). "The party seeking to quash the subpoena bears the burden of demonstrating that compliance with the subpoena would be unreasonable and oppressive, or that compliance will lead to disclosing privileged or protected material." *Rotstain v. Trustmark Nat'l Bank*, No. 3:09-CV-2384-N-BQ, 2020 WL 12968651, at *4 (N.D. Tex. Mar. 10, 2020) (quoting *Wiwa v. Royal Dutch Petrol. Co.*, 392 F.3d 812, 818 (5th Cir. 2004)) (internal quotation marks omitted). The movant must "show how the requested discovery [is] overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Andra Grp., LP v. JDA Software Grp., Inc.*, 312 F.R.D. 444, 449 (N.D. Tex. 2015). And generally, modifying the subpoena "is preferable to quashing it outright," *Wiwa*, 392 F.3d at 818, although the Fifth Circuit has also instructed that "courts are not required to use that lesser remedy [of modification] first," *Tiberi v. CIGNA Ins. Co.*, 40 F.3d 110, 112 (5th Cir. 1994).

### B. Rule 26: Motion for Protective Order

Under Federal Rule of Civil Procedure 26(c)(1), if good cause is shown, a court may "issue an order to protect a party or person from annoyance, embarrassment,

3

oppression, or undue burden or expense[.]" FED. R. CIV. P. 26(c)(1). Further, "[t]he burden is upon the party seeking the protective order to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Ford Motor Co. v. Versata Software, Inc.*, 316 F.Supp.3d 925, 934 (N.D. Tex. 2017) (quoting *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998)) (citation modified). Hence, courts generally require that a movant show both good cause and a specific need for protection. *Rotstain*, 2020 WL 12968651, at *5.

## III. DISCUSSION

### A. Motions to Quash

The Defendants and EG4 present similar arguments in their respective motions. However, unlike EG4, who is the target of the Subpoena, the Defendants' motion faces an additional hurdle—standing. *See, e.g.*, *Bounds v. Cap. Area Fam. Violence Intervention Ctr., Inc.*, 314 F.R.D. 214, 218 (M.D. La. 2016) ("Parties have limited standing to quash subpoenas served on non-parties pursuant to Rule 45."). The Court will first address whether the Defendants have standing to challenge the Subpoena before turning to the merits of the motions to quash.

#### i. Defendants' Motion

To have standing to challenge a subpoena issued to a non-party, the party-movant must either have "possession of the materials subpoenaed" or a "personal right or privilege with respect to the materials subpoenaed." *See Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979); *see also Raytheon Co. v. Indigo Sys. Corp.*,

4

No. 4:07-CV-109, 2008 WL 2509367, at *1 (E.D. Tex. June 23, 2008) (denying motion to quash third-party subpoenas because movant lacked standing). The question of standing is a threshold issue that the court must address before turning to the merits of a party's motion to quash a subpoena directed at a non-party. *MC Trilogy Tex., LLC v. City of Heath*, No. 3:22-CV-2154-D, 2024 WL 201365, at *2–3 (N.D. Tex. Jan. 18, 2024); *see also U.S. Reg'l Econ. Dev. Auth., LLC v. Matthews*, No. 3:16-CV-1093 (CSH), 2018 WL 2172713, at *7 (D. Conn. May 10, 2018) (collecting cases).

Based on the briefing before the Court, the Defendants do not assert that they have standing to challenge the Subpoena. It may be true that James Showalter—EG4's sole governing member—is among the Defendants, but the Defendants nevertheless provide no argument that they possess any of the subpoenaed materials, or that they have a personal right or privilege to the subpoenaed materials. *See* (Dkt. #91, #102). It is not the Court's role to develop arguments that a party has failed to present. *See, e.g.*, *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1257 n.1 (10th Cir. 2001) ("We will not make arguments for [a party] that it did not make in its briefs."). Therefore, the Defendants' motion to quash, (Dkt. #91), is denied.

### ii. EG4's Motion

EG4 requests that the Court quash the Subpoena, in its entirety, on five grounds: (1) the Subpoena puts an undue burden on EG4, (2) the Bielsteins failed to allow EG4 a reasonable time to comply with the Subpoena, (3) the Subpoena asks for trade secrets and other protected information, (4) the Bielsteins failed to comply with Federal Rule of Civil Procedure 30(b)(6), and (5) the Bielsteins failed to effectuate

5

proper service under Rule 45. (Dkt. #94). For the reasons that follow, the Court concludes that the notice and Subpoena failed to provide EG4 a reasonable time to comply and must therefore be quashed pursuant to Rule 45(d)(3)(A).[1]

Before delving into the timing issues of the Bielsteins' last-minute notice, it is worth highlighting the breadth of documents requested by the Subpoena. As a representative sample, the Bielsteins' Subpoena includes the following demands: (1) "[a]ny and all documents or communications relating to the areas of inquiry identified . . . herein"; (2) "[a]ny and all documents related to the design, manufacture and testing of batteries by EG4"; (3) "[a]ny and all documents related to the marketing and advertising of batteries by EG4"; and (4) "[a]ny and all documents or communications exchanged between" EG4 and each of Signature Solar Limited Liability Company, James Showalter, John Showalter, G4LL, and GYLL. (Dkt. #94-1 at 12–13). The Subpoena was thus not a surgical request for a few critical documents, but a fishing expedition for any and all documents and communications in EG4's possession which relate to its battery products and the Defendants.

With the scope of the Subpoena in mind, the Court turns to the compressed timeframe for compliance here. Assuming arguendo that notice was properly delivered, the earliest notice for the Subpoena was sent to Defendants' counsel on March 16 at 3:16 p.m. and the production deadline was set for March 24 at 9:00 a.m. (Dkt. #91-2 at 6); (Dkt. #94-2 ¶ 2). Thus, to comply with the Subpoena, produce the requested documents, and prepare for a deposition, EG4 was given fewer than eight

---

[1] Because the failure to allow EG4 a reasonable time to comply is sufficient grounds to quash the Subpoena, the Court does not reach EG4's remaining arguments.

days. In addressing similar circumstances, district courts have consistently held that a period of ten days or less is an unreasonable time to comply with a production subpoena. *Anstead v. Va. Mason Med. Ctr.*, No. 2:21-CV-447-JCC-JRC, 2023 WL 34505, at \*2 (W.D. Wash. Jan. 4, 2023) (collecting cases); *see also AngioScore, Inc. v. TriReme Med., Inc.*, No. 12-CV-3393-YGR (JSC), 2014 WL 6706898, at \*1 n.1 (N.D. Cal. Nov. 25, 2014) (collecting cases) (finding subpoena procedurally defective because it required compliance within nine days, "which is unreasonable"); *Anderson v. Shell Oil Co.*, No. 93-2235, 1996 WL 280792, at \*1 (E.D. La. May 24, 1996) (holding that a seven-day notice of deposition was unreasonable in light of the extensive discovery requested); *cf. Brown v. Hendler*, No. 09 Civ. 4486 (RLE), 2011 WL 321139, at \*2 (S.D.N.Y. Jan. 31, 2011) (explaining that many courts have found fourteen days from the date of service "presumptively reasonable" and "eight and seven days not to be reasonable"). Consequently, the Court concludes that the less-than-eight-day compliance period here was unreasonable.

Even so, the Bielsteins maintain that the compliance time for the Subpoena was reasonable in this instance because the Defendants' own discovery conduct caused the compressed timing, not any lack of diligence on the part of the Bielsteins. (Dkt. #101 at 6). Specifically, the Bielsteins assert that they did not learn of EG4's significance until the Defendants "belatedly produced" a critical report on February 20, 2026, which "first identified EG4 and did so only after Plaintiffs had already raised deficiencies in Defendants' production." (Dkt. #101 at 6). The Bielsteins' rendition of events leaves out a critical date, however. The production

7

request for this report was not served on the Defendants until January 12, 2026, (Dkt. #102 at 3), despite discovery having been open since July 2025, *see* (Dkt. #64) (original scheduling order). Hence, whatever delay may be attributed to the Defendants, the Bielsteins are also responsible for their last-minute notice and Subpoena, given their own delay in serving the initial production request.

Moreover, the Bielsteins waited an additional twenty-five days *after* the Defendants' production date to serve their Subpoena, despite the fact that the March 25 discovery deadline was only thirty-three days away at the time the report was produced.[2] Thus, contrary to the Bielsteins' characterization of the Defendants' conduct, it appears to the Court that the compressed timeline of the Subpoena was caused in large part by the Bielsteins' own lack of diligence in pursuing discovery. *See generally In re E.F. Hutton Sw. Props. II, Ltd.*, 953 F.2d 963, 973 (5th Cir. 1992) ("If . . . [a] party has not diligently pursued discovery . . . the court need not accommodate the . . . party's belated request." (citation modified)).

Nevertheless, the Bielsteins assert that the unreasonable compliance time set by the Subpoena and their own lack of diligence are now irrelevant because of the Court's stay of the scheduled deposition. (Dkt. #101 at 2). According to the Bielsteins, with the stay in place, there is now "ample time for EG4 to collect documents and sit for a deposition." (Dkt. #101 at 2). The Court will not entertain such gamesmanship.

---

[2] The original discovery deadline was February 25, 2026. (Dkt. #64 at 2). The Court granted the parties' joint motion to extend the discovery deadline to March 25 on March 4, 2026. *See* (Dkt. #87, #88). Even if the Court measures from March 4, when the discovery deadline was extended, the Bielsteins nevertheless waited twelve of the twenty-one remaining discovery days before sending notice of the Subpoena to the Defendants.

The discovery deadline was set for March 25, 2026. Thus, discovery was set to conclude on that date. The Bielsteins cannot now unilaterally extend the discovery deadline by relying on the fact that this Court granted the Defendants' motion to stay the deposition pending resolution of the motions to quash.[3]

Accordingly, for the reasons provided, the Subpoena is quashed.

## B. Motions for Protective Order

In addition to the motions to quash, Defendants and EG4 ask the Court to enter a protective order relieving EG4 of any obligation to respond to the Subpoena. (Dkt. #94 at 12); (Dkt. #91 at 12). However, the Court has already determined that the Subpoena should be quashed. *See supra* Part III.A.ii. And, given that the discovery deadline has passed, Defendants and EG4 do not otherwise explain why a protective order against potential future discovery is necessary. *Cf. Rotstain*, 2020 WL 12968651, at *5 (requiring the movant to show a specific need for protection). The Court therefore denies both requests for a protective order.

## C. Requests for Sanctions

Having quashed the Subpoena, the Defendants and EG4 also ask the Court to award reasonable attorney's fees and costs incurred for their motions as sanctions for the untimely subpoena. As an initial point, the Defendants, including James Showalter in his individual capacity, were not the target of the Subpoena nor did they

---

[3] For the same reason, the Court will not modify the Subpoena to provide EG4 a reasonable time to comply. The Subpoena required production by March 24, 2026, and discovery closed the following day, on March 25. Using the original production deadline as the starting point, any extension necessary to provide a reasonable time to comply—even an extension of only a few days, such as from eight days to ten days—would necessarily require production after the close of discovery, effectively extending the discovery deadline.

have standing to challenge it, therefore the Court will deny their request for sanctions. The Defendants in this case are not entitled to seek attorney's fees and costs for any undue burden or expense imposed by the Subpoena on EG4. The Court thus turns to EG4's request.

Pursuant to Rule 45(d)(1), "[a] party . . . responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." If the subpoenaing party fails to comply with Rule 45(d)(1), then the court "must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on [the subpoenaing] party." FED. R. CIV. P. 45(d)(1).[4] Rule 45(d)(1) does not, however, require that sanctions be imposed automatically when a movant succeeds on its motion to quash a party's subpoena. Rather, to warrant sanctions, the disputed subpoena must impose an undue burden or expense on the subpoenaed party because the issuing party failed to take *reasonable steps* to avoid imposing said burden or expense.

After reviewing the record, the Court concludes that a sanction is warranted in this instance.

### i. Undue Burden?

To determine whether a subpoena has imposed an undue burden on the target party, courts consider "(1) [the] relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the

---

[4] The decision to award attorney's fees and costs as a sanction remains discretionary.

10

requested documents; and (6) the burden imposed." *Wiwa*, 392 F.3d at 818. Courts may also find that a subpoena presents an undue burden when the subpoena is "facially overbroad." *Id.*

Here, the Subpoena at issue is facially overbroad. Courts have found production subpoenas facially overbroad where (1) the subpoena "seek[s] all documents concerning the parties to the underlying action, regardless of whether those documents relate to that action and regardless of date"; (2) "the requests are not particularized"; and (3) "[t]he period covered by the requests is unlimited." *Andra Grp., LP v. JDA Software Grp., Inc.*, 312 F.R.D. 444, 450 (N.D. Tex. 2015) (citation modified). The Subpoena falls within all of these categories. The requests in the Subpoena ask for all documents related to the Defendants, regardless of whether those documents relate to the underlying action. *See* (Dkt. #94-1 at 10). The requests are also not particularized; as far as the Court can tell, EG4 is correct that the Bielsteins are essentially requesting all of their records. *Compare* (Dkt. #94-1 at 10) ("The formation, corporate structure and corporate history of EG4[.]"), *with* (Dkt. #94-1 at 11) ("All specification sheets, manuals, testing reports and diagrams related to the batteries manufactured and produced by EG4 now, or at any time in the past."). And, finally, there does not appear to be any limit to the period of records requested. Accordingly, because the Subpoena is facially overbroad, the Court finds that it is an undue burden on EG4. *See Wiwa*, 392 F.3d at 818.

### ii. Reasonable Steps?

Having established that the Subpoena imposed an undue burden on EG4, the Court also concludes that the Bielsteins failed to take reasonable steps to avoid imposing said burden on EG4. Because of the compressed timeframe for production— fewer than eight days—the Bielsteins arguably did not provide EG4 adequate time to object to the requested productions. There was also no indication in the record that the Bielsteins conferred with EG4 prior to the production date. Rule 30(b)(6) requires that "[b]efore or promptly after the notice or subpoena is served, the serving party and the organization *must confer* in good faith about the matters for examination." FED. R. CIV. P. 30(b)(6) (emphasis added). Here, however, the Subpoena did not advise EG4 that it had a duty to confer. *See* (Dkt. #94-1); FED. R. CIV. P. 30(b)(6) ("A subpoena must advise a nonparty organization of its duty to confer with the serving party[.]"). And, the record does not reflect that the Bielsteins attempted to confer with EG4 before the production deadline.

Hence, to the extent that EG4 did not have time to object to the Subpoena, it also appears that the parties did not meet and confer before the production deadline, nor was EG4 aware of its responsibility to confer with the Bielsteins about the scope of the Subpoena prior to said deadline. These actions, taken together, cannot establish that the Bielsteins took reasonable steps to avoid imposing an undue burden on EG4. As a consequence, EG4's request for a sanction is warranted.

12

*     *     *

Because the Bielsteins have failed to comply with Rule 45(d)(1), the Court will, as an appropriate sanction, award EG4 its reasonable attorney's fees and costs incurred in bringing its Motion to Quash Plaintiffs' Notice of Deposition and for Protective Order and Fees, (Dkt. #94).

## IV. CONCLUSION

It is therefore **ORDERED** that Defendants Signature Solar Limited Liability Company, James Showalter, and John Showalter's Motion to Quash Plaintiffs' Notice of Deposition of EG4 Corporate Designee and for Protective Order and Fees, (Dkt. #91), is **DENIED**.

It is further **ORDERED** that non-party EG4 Electronics LLC's Motion to Quash Plaintiffs' Notice of Deposition and for Protective Order and Fees, (Dkt. #94), is **GRANTED in part** and **DENIED in part**. The Subpoena is quashed in its entirety, including the notice of deposition and production request.

It is further **ORDERED** that EG4 Electronics LLC shall, on or before **August 10, 2026**, file an application for reasonable attorney's fees and costs incurred in bringing its Motion to Quash Plaintiffs' Notice of Deposition and for Protective Order and Fees, (Dkt. #94), accompanied by supporting evidence establishing the amount of the attorney's fees and costs to be awarded under Rules 45(d)(1). If EG4 Electronics LLC files an application, Plaintiffs Mark A. Bielstein and Rachelle R. Bielstein may file a response by **August 24, 2026**, and EG4 Electronics LLC may file a reply by **August 31, 2026**.

**So ORDERED and SIGNED this 28th day of July, 2026.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE